IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVEIANA NAZARIO, individually, and on behalf of all others similarly situated, <br><br>      Plaintiff, <br><br> v. <br><br> SIRIUS XM RADIO, INC., <br><br>      Defendant. | Case No. 1:19-cv-07844 |

## CLASS ACTION COMPLAINT

**NOW COMES** Plaintiff, EVEIANA NAZARIO, individually, and on behalf of all others similarly situated, through the undersigned counsel, complaining of Defendant, SIRIUS XM RADIO, INC., as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

4. EVEIANA NAZARIO ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided in Berwyn, Illinois.

5. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

1

6. SIRIUS XM RADIO, INC. ("Sirius XM") is a corporation organized under the laws of Delaware.

7. Sirius XM maintains its principal place of business at 1221 Avenue of the Americas, New York, New York 10020.

8. Sirius XM provides radio-broadcasting services to consumers nationwide on a subscription fee basis.

9. Sirius XM is a "person" as defined by 47 U.S.C. § 153(39).

## TELEPHONE CONSUMER PROTECTION ACT OF 1991

10. Voluminous consumer complaints about abuses of telephone technology prompted Congress to pass the TCPA.

11. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.

12. The TCPA bans certain practices invasive of privacy and directs the Federal Communications Commission to prescribe implementing regulations.

13. Congress provided for civil actions by private parties seeking redress for violations of the TCPA or of the Commission's implementing regulations.

14. In enacting the TCPA, Congress made several findings relevant here. "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings).

15. In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls." *Id*. at ¶ 6.

16. "[A]utomated or prerecorded telephone calls" … Congress found, were rightly regarded by recipients as "an invasion of privacy." *Id*. at ¶¶ 10, 12.

17. The TCPA makes it unlawful to use an automatic telephone dialing system to place a call to a cellular phone without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

## GENERAL ALLEGATIONS

18. Sirius XM's outbound telemarketing efforts include the use of an automatic telephone dialing system ("ATDS") to solicit consumers nationwide and within Illinois.

19. The Federal Trade Commission ("FTC") has held that a basic function of an ATDS is the ability to dial thousands of numbers in a short time period.

20. Upon information and belief, Sirius XM's outbound dialing system has the *capacity* – (A) to store *or* produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

21. An ATDS allows Sirius XM's telemarketing agents to only communicate with consumers who answer their phone.

22. Consequently, Sirius XM shifts the burden of wasted time to consumers with unsolicited calls and messages.

## FACTUAL ALLEGATIONS

23. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 5052.

24. At all times relevant, Plaintiff's number ending in 5052 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

25. At all times relevant, Plaintiff was financially responsible for her cellular telephone equipment and services.

26. On July 6, 2019, Plaintiff purchased a 2018 Nissan Versa (the "Vehicle") from Hawk Chrysler Dodge Jeep (the "Dealer") in Forest Park, Illinois.

27. The Vehicle came with a Sirius XM application which enabled Plaintiff to subscribe to Sirius XM's services if she so desired.

28. Plaintiff was never presented with any material relating to Sirius XM during the purchase of the Vehicle.

29. Weeks after the purchase of the Vehicle, Plaintiff started receiving phone calls from Sirius XM.

30. The calls were made in an attempt to market Sirius XM's satellite radio services to Plaintiff.

31. Each time Plaintiff answered Sirius XM's calls, she was met by a conspicuous pause and was forced to say "hello" 3-4 times prior to being connected to a Sirius XM representative.

32. On October 8, 2019, Plaintiff received a phone call from Sirius XM.

33. Plaintiff answered the phone call and informed the Sirius XM representative that she was not interested in Sirius XM's services and requested that the solicitation calls cease.

34. Despite Plaintiff's request that the calls cease, Sirius XM continues to place marketing calls to Plaintiff's cellular phone.

35. At no time did Plaintiff provide her cellular phone number to Sirius XM or otherwise consent to receiving phone calls from Sirius XM.

36. Sirius XM's phone calls came from various phone numbers, including but not limited to, the phone number (773) 839-6904.

37. Sirius XM's unsolicited telemarketing phone calls have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unwanted telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, deprivation of access to her cellular phone while the phone is ringing, loss of battery charge, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her cellular phone.

38. Plaintiff was forced to file this action to compel Sirius XM to cease its marketing calls.

## CLASS ALLEGATIONS

39. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

40. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All persons within the United States of America: (a) to whom Sirius XM and/or a third party acting on Sirius XM's behalf, made one or more phone call(s); (b) marketing/promoting Sirius XM's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; (e) without prior express written consent; and (f) at any time in the period that begins four years before the date of the filing of this Complaint through the date of class certification.

41. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Sirius XM, Sirius XM's subsidiaries, parents, successors, predecessors, and any entity in which Sirius XM or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from

the Putative Class; (5) the legal representatives, successors or assigns of any such executed persons; and (6) persons whose claims against Sirius XM have been fully and finally adjudicated and/or released.

### A. Numerosity:

42. The exact number of members of the Putative Class are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

43. Upon information and belief, Sirius XM made telemarketing/promotional phone calls to thousands of consumers who fall into the definition of the Putative Class.

44. Members of the Putative Class can be objectively identified from records of Sirius XM and any affiliated marketers to be gained in discovery.

### B. Commonality and Predominance:

45. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class, and those questions predominate over any questions that may affect individual members of the Putative Class. Common questions for the Putative Class include, but are not necessarily limited to the following:

    i. Whether Sirius XM placed (or caused to be placed) telemarketing/promotional phone calls to Plaintiff and the Putative Class Members?

    ii. Whether Sirius XM had prior express written consent to make telemarketing/promotional phone calls to Plaintiff and the Putative Class Members?

    iii. Whether Sirius XM used an ATDS as defined by the TCPA and applicable FCC regulations and orders?

    v. Whether Sirius XM's violations were performed willfully such that Plaintiff and the members of the Putative Class are entitled to treble damages?

**C.     Typicality:**

46.     Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as result of Sirius XM's conduct.

**D.     Superiority and Manageability:**

47.     This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

48.     The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

49.     By contrast, a class action provides the benefits of single adjudication, economies of scale and comprehensive supervision by a single court.

50.     Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.     Adequate Representation:**

51.     Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

52.     Plaintiff has no interests antagonistic to those of the Putative Class, and Sirius XM has no defenses unique to Plaintiff.

53.     Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

### COUNT I (TCPA):
**Violations of 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiff and Members of the Putative Class)**

54. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

55. Among other things, the TCPA prohibits certain calls to wireless and residential numbers unless the caller has the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A).

56. Under the TCPA Consent Rules, some types of calls require prior express *written* consent, while other types of calls do not require that the consent be in writing.

57. "Prior express *written* consent" is required for:

- All telemarketing/promotional calls/texts made using an ATDS placed to wireless numbers; and
- All artificial or prerecorded telemarketing/promotional voice calls to wireless and residential numbers.[1]

58. The TCPA Consent Rules define "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (2012).

---

[1] 47 C.F.R. §§ 64.1200(a)(2), (a)(3).

59. As set forth above, Sirius XM placed or caused to be placed telemarketing/promotional calls to Plaintiff's cellular telephone number ending in 5052 utilizing an ATDS without Plaintiff's prior express written consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

60. Upon information and belief, based on the conspicuous lengthy pause Plaintiff experienced prior to being connected to a live representative, Sirius XM employed an ATDS to place calls to Plaintiff.

61. Upon information and belief, the ATDS employed by Sirius XM transfers the call to a representative once a human voice is detected, hence the conspicuous lengthy pause prior to being connected.

62. Upon information and belief, based on the fact that Plaintiff never provided her cellular phone number to Sirius XM, Sirius XM utilized a system that generated Plaintiff's phone number using a random or sequential number generator.

63. Upon information and belief, the ATDS employed by Sirius XM has the *capacity* – (A) to store *or* produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

64. Upon information and belief, Sirius XM has no database to maintain and update consumers' contact preferences and consent to call them.

65. As a result of Sirius XM's violations of 47 U.S.C. § 227 *et seq*., Plaintiff and the members of the Putative Class are entitled to receive $500.00 in damages for each such violation.

66. As a result of Sirius XM's *knowing and willful violations* of 47 U.S.C. § 227 *et seq*., Plaintiff and the members of the Putative Class entitled to receive up to $1,500.00 in treble damages for each such violation.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Putative Class, requests the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative and the appointment of the undersigned as Class Counsel;

B. an order finding that Sirius XM violated 47 U.S.C. § 227 *et seq.*;

C. an order enjoining Sirius XM from placing or causing to place violating calls to consumers;

D. an award of damages of $500.00 to Plaintiff and the members of the Putative Class for each such violation;

E. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each such violation; and

F. an award of such other relief as this Court deems just and proper.

**Plaintiff demands trial by jury.**

Dated: November 27, 2019						Respectfully Submitted,

/s/ *Mohammed O. Badwan*

/s/ *Joseph S. Davidson*

Mohammed O. Badwan, Esq.
Joseph S. Davidson, Esq.
Victor T. Metroff, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
Lombard, IL 60148
Phone (630)575-8180
Fax: (630)575- 8188
mbadwan@sulaimanlaw.com
jdavidson@sulaimanlaw.com
vmetroff@sulaimanlaw.com