**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EVEIANA NAZARIO, <br><br> *Plaintiff,* <br><br> -against- <br><br> SIRIUS XM RADIO INC., <br><br> *Defendant.* | Case No.: 1:19-cv-07844 <br><br> Hon. Charles R. Norgle, Sr. |

**MEMORANDUM IN SUPPORT OF DEFENDANT SIRIUS XM'S
MOTION TO DISMISS FOR FAILING TO STATE A CLAIM OR, IN THE
ALTERNATIVE, TO STAY PENDING THE SEVENTH CIRCUIT'S DECISION IN
*GADELHAK v. AT&T SERVICES, INC.***

Christopher Adam Hall
JONES DAY
77 West Wacker
Chicago, Illinois 60601-1692
Tel: (312) 782-3939
Email: chall@jonesday.com

Thomas Demitrack (*pro hac vice* forthcoming)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Email: tdemitrack@jonesday.com

Lee A. Armstrong (*pro hac vice* forthcoming)
JONES DAY
250 Vesey Street
New York, New York
Tel: (212) 326-3939
Email: laarmstrong@jonesday.com
*Attorneys for Defendant Sirius XM Radio Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTS ................................................................................................................................ 2

ARGUMENT ...................................................................................................................... 3

I.     THE TCPA'S CONTENT-BASED RESTRICTION FAILS STRICT
SCRUTINY ................................................................................................................ 3

     A.     The ATDS Prohibition and Its Implementing Regulations Are
Content-Based ................................................................................................ 3

     B.     The ATDS Prohibition and Its Implementing Regulations Fail
Strict Scrutiny ................................................................................................ 4

     C.     The Unconstitutional ATDS Prohibition Must Be Stricken .................................. 6

II.    ALTERNATIVELY, THE COURT SHOULD STAY PENDING
UPCOMING DECISIONS FROM THE SEVENTH CIRCUIT AND
THE SUPREME COURT ......................................................................................... 12

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Ass'n of Political Consultants, Inc. v. FCC*,
    923 F.3d 159 (4th Cir. 2019) ..................................................................4, 5, 8, 9

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
    564 U.S. 721 (2011)..............................................................................................4

*Ark. Writers' Project, Inc. v. Ragland*,
    481 U.S. 221 (1987)..............................................................................................7

*Ashwander v. Tenn. Valley Auth.*,
    297 U.S. 288 (1936)............................................................................................14

*Barnes v. CS Mktg. LLC*,
    __ F. Supp. 3d __, 2020 WL 30373 (S.D. Fla. Jan. 2, 2020)...................................14

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983)................................................................................................5

*Bond v. United States*,
    564 U.S. 211 (2011)............................................................................................11

*Brown v. Entm't Merchants Ass'n*,
    564 U.S. 786 (2011)..........................................................................................3, 4

*Burson v. Freeman*,
    504 U.S. 191 (1992)..............................................................................................5

*Carey v. Brown*,
    447 U.S. 455 (1980)..........................................................................................3, 7

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018)................................................................................12

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019) ....................................................................*passim*

*Erznoznik v. City of Jacksonville*,
    422 U.S. 205 (1975)..............................................................................................5

*Gadelhak v. AT&T Servs., Inc.*,
    2019 WL 1429346 (N.D. Ill. Mar. 29, 2019).....................................................13

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)........................................................................................7, 11

*Green Valley Invs. v. Winnebago County*,
    794 F.3d 864 (7th Cir. 2015)..............................................................................11

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)..................................................................................................5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Jackson v. Van Kampen Series Fund, Inc.*,
   2007 WL 1532090 (S.D. Ill. May 24, 2007) ..........................................................12

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ...............................................................................................12

*Lucia v. SEC*,
   138 S. Ct. 2044 (2018) .............................................................................................7

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) ...............................................................................13

*Martin v. City of Struthers*,
   319 U.S. 141 (1943) .................................................................................................5

*Metromedia, Inc. v. City of San Diego*,
   453 U.S. 490 (1981) .................................................................................................3

*Morgan v. Collection Assocs., Ltd.*,
   2013 WL 2634288 (E.D. Wis. June 11, 2013) ......................................................12

*Patriotic Veterans, Inc. v. Zoeller*,
   845 F.3d 303 (7th Cir. 2017) ...........................................................................10, 11

*Pinkus v. Sirius XM Radio, Inc.*,
   319 F. Supp. 3d 927 (N.D. Ill. 2018) .....................................................................13

*Police Dep't of Chicago v. Mosley*,
   408 U.S. 92 (1972) ................................................................................................3, 6

*Rappa v. New Castle County*,
   18 F.3d 1043 (3d Cir. 1994) .................................................................................7, 9

*Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015) ..........................................................................................3, 5

*Rosenberger v. Rector*,
   515 U.S. 819 (1995) .................................................................................................4

*Tonn & Blank Constr., LLC v. Sebelius*,
   968 F. Supp. 2d 990 (N.D. Ind. 2013) ...................................................................12

**STATUTES**

47 U.S.C. § 227 ................................................................................................... *passim*

47 U.S.C. § 608 .....................................................................................................8, 9

**OTHER AUTHORITIES**

47 C.F.R. § 227 .........................................................................................................5

Apple, How To Use Do Not Disturb While Driving ................................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Cargo Airline Ass'n Pet. for Expedited Declaratory Ruling*,
    29 FCC Rcd. 5056 (2014)...................................................................................1

*In Re Rules & Regs. Implementing the TCPA*,
    30 FCC Rcd. 7961 (2015)...................................................................................1

*In Re Rules & Regs. Implementing the TCPA*,
    31 FCC Rcd. 9054 (2016)...................................................................................1

Letter from Rita Bratcher, Financial Management Service, U.S. Department of the
    Treasury, to Kevin Martin, FCC,
    CC Docket No. 02-278 (filed Jan. 26, 2007).................................................9, 10

Letter from Scott Johnson, Financial Management Service, U.S. Department of
    the Treasury, to Marlene Dortch, FCC,
    CC Docket No. 02-278 (filed May 20, 2010)....................................................10

## INTRODUCTION

The Telephone Consumer Protection Act generally puts a $500 price tag on any unwanted call or text placed to wireless numbers using an "automatic telephone dialing system" (or "ATDS"). 47 U.S.C. § 227(b)(1)(A)(iii). But there are a host of exceptions. By statute, the prohibition does not apply to calls "made solely to collect a debt owed to or guaranteed by the United States." *Id.* By regulation, it does not apply to many others: "package delivery notifications,"[1] calls about "financial and healthcare issues" like "money transfers" and "exam confirmations and reminders,"[2] calls "closely related to [a] school's mission, such as notification of an upcoming teacher conference or general school activity,"[3] and calls by "utility companies" on "matters closely related to the utility service, such as a service outage."[4]

The First Amendment and the Equal Protection aspect of the Due Process Clause prohibit Congress and the Federal Communications Commission from choosing their preferred messages in this fashion. Because the ATDS prohibition is a content-based restriction on speech that cannot pass strict scrutiny, Sirius XM cannot be held liable for allegedly violating it. But if the Court wishes to postpone resolving that constitutional question, it may properly do so. The Seventh Circuit will soon decide what counts as an ATDS in the first place, which will provide instruction on whether Plaintiff can even state a claim, potentially mooting the constitutional question in this

---

[1] *In re Cargo Airline Ass'n Pet. for Expedited Declaratory Ruling*, 29 FCC Rcd. 5056, 5056 (2014).

[2] *In Re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8023, 8026, 8030 (2015).

[3] *In Re Rules & Regs. Implementing the TCPA*, 31 FCC Rcd. 9054, 9061 (2016)

[4] *Id.*

case. At the least, this Court should stay proceedings to await that decision.[5] And, in any event, the constitutional question itself may soon be before the Supreme Court, further supporting a stay.

## FACTS

Sirius XM runs a nationwide satellite radio service with over 34 million subscribers. As part of those efforts, it works with vehicle manufacturers and dealerships to install Sirius XM-compatible equipment in new and used vehicles and to provide trial subscriptions to consumers who purchase or lease those vehicles. It then contacts those trial subscribers—on phone numbers consensually provided to Sirius XM through its relationships with manufacturers and dealerships—to invite those trial subscribers to continue as paying subscribers.

According to Nazario's Complaint, she purchased a 2018 Nissan Versa from a dealership in Forest Park, Illinois. Compl. ¶ 26. Her car came with a trial subscription to Sirius XM's services. Compl. ¶ 27. "Weeks after the purchase," she began to receive phone calls to her wireless number "attempt[ing] to market Sirius XM's satellite radio services." Compl. ¶¶ 29, 30.

Nazario alleges that Sirius XM made the phone calls using an "automatic telephone dialing system"—defined by statute as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *see* Compl. ¶ 18. As support for this claim about Sirius XM's calling equipment, Nazario alleges that—in a stroke of remarkable luck—Sirius XM must have randomly generated her number; after all, she never gave it to Sirius XM. *See* Compl. ¶ 62.

---

[5] Of course, Sirius XM has other defenses to Nazario's Complaint, including that it fails to state a claim because it does not plausibly allege that Sirius XM used an ATDS to call her. As explained below, however, the Seventh Circuit will soon set forth the requisite functions of an ATDS, *see infra* 12–14, and so it makes sense for the parties and the Court to defer addressing that issue at this time.

She also alleges that Sirius XM must use an ATDS because she heard a "conspicuous lengthy pause … prior to being connected to a live representative." *Id.*

## ARGUMENT

**I.    THE TCPA'S CONTENT-BASED RESTRICTION FAILS STRICT SCRUTINY**

**A.    The ATDS Prohibition and Its Implementing Regulations Are Content-Based**

Under the Free Speech Clause, "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790–91 (2011). Similarly, under the Equal Protection Clause, government has no power to "discriminat[e] among speech-related activities" because of "the content of the [speaker's] communication." *Carey v. Brown*, 447 U.S. 455, 460-61 (1980). As a general matter, content-based regulation of speech complies with the Constitution only if the Government "can demonstrate that it passes strict scrutiny." *Entm't Merchants*, 564 U.S. at 799.

A law is content-based if it "draws distinctions based on the message a speaker conveys," *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015), or "accords preferential treatment to the expression of views on one particular subject," *Carey*, 447 U.S. at 461. For example, a restriction on picketing near schools that exempts picketing on labor issues "is based on . . . content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 (1972). So is a restriction on picketing near houses that exempts labor picketing. *Carey*, 447 U.S. at 460–61. And so is a restriction on billboards that carves out billboards carrying commercial messages. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 516 (1981) (plurality op.).

Section 227(b)(1)(A)(iii)—which prohibits using ATDS equipment to call wireless numbers "unless such call is made solely to collect a debt owed to or guaranteed by the United States"—regulates speech on the basis of its content. "It is obvious from the text that the debt-collection exemption's applicability turns entirely on the content of the communication—i.e.,

whether it is 'solely to collect a debt owed to or guaranteed by the United States.'" *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1153 (9th Cir. 2019), *pet. for cert. pending*, No. 19-511 (U.S.); *accord Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 165–67 (4th Cir. 2019) (same), *pet. for cert. pending*, No. 19-631 (U.S.). That is, it is the message of the call—and only the message of the call—that triggers liability; no matter the caller's identity or relationship to the called party, a call is exempt if and only if the caller tries to collect a government-owned or government-backed debt. Indeed, because the law exempts only those who seek to *collect* such a debt (rather than, say, to tell the called party about the bankruptcy laws or to urge her to protest the debt), the exemption amounts to outright viewpoint discrimination—a "blatant" and "egregious form of content discrimination," *Rosenberger v. Rector*, 515 U.S. 819, 829 (1995).

The FCC's regulatory exemptions are no different; they, too, turn on the content of the call or text. If, for example, you are sending a package delivery notification, providing an exam reminder, telling parents about upcoming parent-teacher conferences, or warning area residents about a storm-related power outage, you may do so without fear of liability. Otherwise, every call or text threatens $500 to $1500 in damages, at least absent the called party's express consent.

### B. The ATDS Prohibition and Its Implementing Regulations Fail Strict Scrutiny

A content-based speech restriction complies with the First Amendment only if it satisfies "strict scrutiny"—only if "the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011); *see also Carey*, 447 U.S. at 461 (applying "carefu[l] scrutin[y]" under analogous equal protection principles). It is the "rare" case in which a content-based restriction satisfies these exacting standards. *Entm't Merchants*, 564 U.S. at 799. This is not one of them.

Section 227(b)'s purported goal—protecting cell phone owners from unwanted automated calls—is not a compelling interest. An objective qualifies as a compelling interest only if it is a

public goal "of the highest order," *Reed*, 135 S. Ct. at 2232—on par with "combating terrorism," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010), or "preventing … election fraud," *Burson v. Freeman*, 504 U.S. 191, 206 (1992) (plurality op.). Protecting listeners from speech they might find unwanted does not meet this standard. To the contrary, the Government ordinarily lacks the power "to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210 (1975); *see also, e.g.*, *Martin v. City of Struthers*, 319 U.S. 141, 142 (1943) (striking down an ordinance making it unlawful to "ring the door bell, sound the door knocker, or otherwise summon" residents when "distributing handbills, circulars or other advertisements"). Instead, the Government must do what the TCPA did for residential telephone subscribers—allow those recipients to *opt out* of unwanted communications and penalize callers who refuse to honor such opt-outs. *See Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 72 (1983) (those upset by unwanted mailings about birth control must simply make the "short, though regular, journey from mail box to trash can"); 47 C.F.R. § 227(c) (authorizing the FCC to create the nationwide Do Not Call Registry).

Even if protecting people from unwanted phone calls were a compelling governmental interest, the exemptions blow a gaping hole in the government's purported attempt to further that interest in anything like a narrowly tailored fashion. By the end of fiscal year 2016, the government "had either guaranteed or was owed nearly eighty percent of all outstanding student loan debt." *Political Consultants*, 923 F.3d at 168. And "[v]arious other categories of such debt are handled through other departments," meaning that "millions of debtors owe debts about which third parties can make otherwise prohibited calls under the debt-collection exemption." *Id.* These calls are "every bit as invasive of residential and personal privacy as any other automated call," and yet tens of millions of them may be made without regard to the recipient's consent. *Duguid*, 926 F.3d at

- 5 -

1155. And that does not even count the tens of millions of other potentially disruptive calls and text messages that may be sent pursuant to the other content-based exemptions: yet another reminder to pick up your prescription, yet another notification about the upcoming class picture, yet another text about power outages in the general area. If the government took privacy from computer-assisted calls as seriously as a content-based law demands, it would not carve out tens or hundreds of millions of indistinguishable calls.

      **C.**      **The Unconstitutional ATDS Prohibition Must Be Stricken**

      1.      When a statute pairs a broad, content-neutral restriction with content-based exemptions, the remedy is to strike the challenged prohibition, not to sever the speech-permitting exemptions. That is what the Supreme Court has done. Take *Police Department of the City of Chicago v. Mosley*, 408 U.S. 92, and *Grayned v. City of Rockford*, 408 U.S. 104 (1972), decided the same day. Two municipalities banned picketing near schools, but exempted "the peaceful picketing of any school involved in a labor dispute." *Mosley*, 408 U.S. at 93; *Grayned*, 408 U.S. at 107. Mosley sued because he wished to continue protesting outside a school that he believed "practice[d] black discrimination," 408 U.S. at 93, while Grayned sought to overturn his conviction for protesting for equal rights, *see* 408 U.S. at 105.

      The Supreme Court agreed with Mosley and Grayned that the ordinances "ma[de] an impermissible distinction between labor picketing and other peaceful picketing." *Mosley*, 408 U.S. at 94; *see Grayned*, 408 U.S. at 107. The Court then held that the content-neutral ordinances, not the content-based exemption, had to go. *See Mosley*, 408 U.S. at 102; *see Grayned*, 408 U.S. at 107 (reversing Grayned's conviction because it came "under [an] invalid ordinance"). Indeed, in *Grayned*, the municipality had already "delete[d] the labor picketing proviso" by the time the case reached this Court. 408 U.S. at 107 n.2. It did not matter. "This amendment and deletion ha[d], of course, no effect on [Grayned's] personal situation," because the Court had to "consider the facial

constitutionality of the ordinance in effect when [he] was arrested and convicted." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221 (1987) (invalidating the application of a state sales tax to magazines rather than striking the content-based exemptions); *Carey*, 447 U.S. at 459 (invalidating an antipicketing ordinance rather than striking its labor-dispute exemption).

The same result should follow here. Like the prosecutor who convicted Grayned, Nazario seeks to hold Sirius XM liable for calls made under a statute that unconstitutionally exempts other calls and text messages because of their content. And like the Supreme Court in *Grayned*, this Court must remedy Sirius XM's constitutional injury by invalidating that prohibition, not by severing the exemptions and then holding Sirius XM retroactively liable under a now content-neutral statute that did not exist when Sirius XM placed the calls in question.

2.      In addition to being compelled by precedent, striking the prohibition rather than severing the exemptions makes sense. To begin, courts generally deploy remedies that "create incentives to raise [constitutional] challenges." *Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018) (internal quotation marks and alterations omitted). But if a court "remedies" an unconstitutional content-based exemption, the prize for successfully challenging such a scheme is nothing. In fact, it is worse than that—"successfully" challenging a content-based scheme leads to a *broader* prohibition on speech if the content-based exemptions are stricken. Given the "special status of speech in our constitutional scheme," *Rappa v. New Castle County*, 18 F.3d 1043, 1073 (3d Cir. 1994), courts should leave it to legislatures to craft any restrictions that meet the high bar for speech prohibitions, not draft them themselves. *See id.* ("[A]bsent quite specific evidence of a legislative preference for elimination of [an] exception," courts should not assume that the "legislature would prefer" to "restrict more speech.").

Once courts get into the business of blue-penciling speech codes, it will be difficult to divine any principled place to stop. The ATDS provision offers a great example. As explained above, *see supra* 1, the ATDS provision is shot through with content-based exemptions, both as a matter of statute and as a matter of regulation. Under Sirius XM's remedial approach, which is consistent with Supreme Court precedent, courts confronting this unconstitutional scheme need only level up—strike the prohibition and thereby treat every call as favorably as Congress and the FCC tried to treat their favorites. Under any other approach, judges would have to weigh the purported importance of the exempted speech against the purported harms of ATDS calls. In our system of government, that is quite obviously a task for elected or administrative officials, not the federal courts.

3. Two circuit courts have reached a contrary remedial conclusion with regard to the ATDS provision. *See Duguid*, 926 F.3d at 1156–57 (severing the debt-collection exemption); *Political Consultants*, 923 F.3d at 170–72 (same). On this point, these decisions are mistaken.

Both *Duguid* and *Political Consultants* relied in part on 47 U.S.C. § 608, a part of the communications laws that provides that "[i]f any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." *See Duguid*, 926 F.3d at 1156; *Political Consultants*, 923 F.3d at 171. As an initial matter, this reasoning misunderstands the nature of Sirius XM's challenge. It is not the exemptions that are unlawful; they do not impose any obligations on anyone, but simply allow more speech than the prohibition otherwise would. The challenge is to the *ATDS prohibition*, which violates the First Amendment. It is the *ATDS prohibition*, not the exemptions, which threaten Sirius XM and others with massive liability. Striking down that prohibition fully accords with the severability clause by

- 8 -

leaving the rest of the TCPA—such as its ban on automated or prerecorded calls, *see* 47 U.S.C. § 227(b)(1)(A)(iii)—in place.

The severability clause cannot bear the weight that *Duguid* and *Political Consultants* would put on it for other reasons as well. As *Duguid* recognized, such clauses are "not dispositive." 926 F.3d at 1156. And while such clauses might provide "strong evidence" of Congress's intent in some situations, *id.*, the severability clause in section 608 provides no such evidence here. It was enacted in *1934*, nearly 60 years prior to when the TCPA became law in 1991 and more than 80 years before Congress amended the TCPA to exempt calls to collect government-owned or government-backed debt. Congress's decision almost a century later to craft an exemption to a consumer-protection statute that just happens to be found in the same chapter as the communications laws says next to nothing about Congress's intent with respect to severability. That is particularly true given that *speech* is at stake. Courts require "specific" evidence of legislative intent, beyond that contained in a boilerplate severability clause, before "restrict[ing] more speech" by severing an exemption. *Rappa*, 18 F.3d at 1073.

Both *Duguid* and *Political Consultants* also relied on the TCPA's history in reaching their remedial conclusion. On their view, because the ATDS prohibition was in place for some years before Congress amended it to exclude debt-collection calls in 2015, Congress must want to sever the exemption rather than get rid of the ATDS prohibition entirely in the event of a successful First Amendment challenge. *See Duguid*, 926 F.3d at 1156–57; *Political Consultants*, 923 F.3d at 171. But the better inference runs the other way. By 2015, Congress knew how much its debt collectors struggled to comply with the FCC's ever-changing views of the ATDS prohibition. *See* Letter from Rita Bratcher, Financial Management Service, U.S. Department of the Treasury, to Kevin Martin, FCC, CC Docket No. 02-278, at 2 (filed Jan. 26, 2007) (complaining that the FCC's orders had

- 9 -

"create[d] confusion regarding the scope and applicability of the autodialer ban to debt collection calls"), *available at* https://ecfsapi.fcc.gov/file/6518723834.pdf; *see also*, *e.g.*, Letter from Scott Johnson, Financial Management Service, U.S. Department of the Treasury, to Marlene Dortch, FCC, CC Docket No. 02-278, at 2 (filed May 20, 2010) (raising similar concerns), *available at* https://ecfsapi.fcc.gov/file/7020544285.pdf. Given that context, it makes more sense to believe that Congress would rather do away with the ATDS prohibition as a whole than again subject its debt collectors to the regime that prompted Congress to add the exemption in the first place.

4.      Finally, *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303 (7th Cir. 2017), does not compel a different remedial conclusion. There, a veteran's group prospectively challenged an Indiana anti-robocall statute that exempted "[m]essages from school districts to students, parents, or employees"; "[m]essages to subscribers with whom the caller has a current business or personal relationship"; and "[m]essages advising employees of work schedules." *Id.* at 304. The Seventh Circuit held that the first two exemptions were not content-based because they concerned "who may be called, not what may be said." *Id.* at 305. While the same could not "quite" be said of the employee-related exemption (given its discussion of work schedules), the court would not allow the veteran's group (the plaintiff in that case) to base its challenge on that exemption. That group "d[id] not feel inhibited in communicating with its own employees," "[s]o if [the court] were to hold that employers may say anything they like in automated calls to employees, this would do [the group] no good." *Id.* And an injunction "striking [the exemption] from the statute" would "make [the group] worse off by making it harder to get in touch with its staff," which explained why the veteran's group "understandably ha[d] not asked for that relief." *Id.* As a result, "[p]otential problems with how subsection (a)(3) affects other persons d[id] not give plaintiff standing to complain about" the statute itself, which was "its target in [its] suit." *Id.*

*Zoeller* is distinguishable. First, and most importantly, the organization in *Zoeller* sought *prospective* relief for calls that it wished to make; it did not (as Sirius XM is doing) raise a constitutional defense to liability for calls already placed under the existing statutory scheme. That difference matters. It is one thing to say that a plaintiff lacks standing to enjoin a speech restriction because a portion of the scheme that he does not challenge and is not harmed by violates the law; it is something else entirely to say that a defendant somehow lacks "standing" to complain that the very prohibition under which he is to be held liable, for conduct that already occurred, is shot through with content-based distinctions. Second, the severability of a state statute is "a matter of state law," *Green Valley Invs. v. Winnebago County*, 794 F.3d 864, 869 (7th Cir. 2015), even when a state statute is invalidated on federal constitutional grounds. Whatever *Zoeller*'s comments about standing mean for severability in the context of a prospective challenge to an Indiana law, it does not compel any conclusion about the federal severability principles as applied to federal statutes.

Indeed, *Zoeller* cannot be read to deprive defendants of "standing" to challenge a content-based exemption to the prohibition to be enforced against them; otherwise, it would obviously conflict with Supreme Court precedent. Consider again the protester in *Grayned*. He wanted to protest for civil rights, not labor peace, and so could not have qualified for the labor exemption. It did not matter. The Supreme Court still overturned his conviction because the statute authorizing that conviction was "facial[ly] [un]constitutional[]" in light of that content-based exemption. 408 U.S. at 107 & n.2. If Grayned had standing to complain about that exemption, Sirius XM—which faces massive putative liability for its phone calls—must have standing to defend itself by reference to the ATDS provision's unconstitutional exemptions as well. *Cf. Bond v. United States*, 564 U.S. 211, 226 (2011) (Ginsburg, J., concurring) ("Bond, like any other defendant, has a personal right not to be convicted under a constitutionally invalid law.").

## II.     ALTERNATIVELY, THE COURT SHOULD STAY PENDING UPCOMING DECISIONS FROM THE SEVENTH CIRCUIT AND THE SUPREME COURT

The Court need not consider these constitutional issues right now. In *Gadelhak v. AT&T Services, Inc.*, No. 19-1738 (7th Cir.), the Seventh Circuit will decide what counts as an ATDS. That imminent decision—or a Supreme Court decision on the same constitutional challenge raised above—may eliminate any need to ever address constitutional issues here, let alone now.

1.     A district court has inherent authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). District courts frequently grant such stays where the circuit court whose precedent binds them is about to decide a key issue related to a case. *See, e.g.*, *Tonn & Blank Constr., LLC v. Sebelius*, 968 F. Supp. 2d 990, 994 (N.D. Ind. 2013) (granting stay where impending circuit court decisions would "address the merits of the same substantive issues raised" in the district court litigation); *Morgan v. Collection Assocs., Ltd.*, 2013 WL 2634288, at *1 (E.D. Wis. June 11, 2013) (similar); *Jackson v. Van Kampen Series Fund, Inc.*, 2007 WL 1532090, at *2 (S.D. Ill. May 24, 2007) (similar).

Those circumstances are present here. Nazario alleges that Sirius XM called her using an ATDS—that is, using equipment which "has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Compl. ¶ 20 (quoting 47 U.S.C. § 227(a)(1)). That allegation goes to a central question in this case: what must equipment do to qualify as an ATDS?  On one view—Sirius XM's view, which is also the correct one—equipment qualifies as an ATDS if and only if it has the capacity to generate and dial random or sequential numbers. *See, e.g.*, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 120 (3d Cir. 2018) (affirming summary judgment because the plaintiff's expert did not explain how the system in question "actually did or could generate random telephone numbers to

dial"); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927 (N.D. Ill. 2018) (granting motion to dismiss for similar reasons). On another view of the statute—the wrong view, Nazario's—the ATDS prohibition instead covers any equipment that can store and automatically dial telephone numbers. *See* Compl. ¶¶ 19, 60–63; *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).

The Seventh Circuit will soon decide which of these competing views of the statute is correct. In *Gadelhak v. AT&T Services, Inc.*, the district court granted summary judgment in AT&T's favor because its equipment—which it used to send automated text messages inviting customers to fill out a survey—lacked the capacity "to generate numbers randomly." 2019 WL 1429346, at *7 (N.D. Ill. Mar. 29, 2019). The sole issue on appeal is whether that interpretation of the ATDS provision is correct. *See* Plaintiff-Appellant's Brief, 2019 WL 3020870 (July 1, 2019). Given that the panel heard argument on September 27, 2019, its decision should be coming any day now.

The Seventh Circuit's imminent decision will likely dispose of this case, and in any event will significantly affect its contours. If the Seventh Circuit holds that equipment must generate random or sequential numbers, then this case will soon be over. Neither Sirius XM nor its vendors have ever used equipment that can generate and then dial random or sequential numbers. That should not be a surprise: Sirius XM is trying to reach its own *trial subscribers*, not merely offer paid subscriptions to whomever happens to answer a phone call. Its vendors are therefore dialing from lists of trial subscribers. Thus, while Nazario's Complaint (implausibly) alleges that Sirius XM must be using equipment that is dialing randomly-generated numbers (and not from lists) because she never directly gave Sirius XM her number, *see* Compl. ¶ 62, Sirius XM will easily disprove those allegations once the Seventh Circuit sets forth the correct standard for liability.

- 13 -

On the other hand, if the Seventh Circuit were to hold that the ATDS definition does cover equipment that can store and automatically dial numbers (for example, from a list), Sirius XM will have a different factual defense, namely, that the equipment used by its vendors lacks the capacity to dial wireless numbers automatically. Discovery may be necessary to develop a sufficient record to present that defense at summary judgment, but in the meantime, there would be two constitutional issues to resolve at an early stage: the content-based challenge discussed above, and an independent First Amendment challenge to a breathtakingly broad interpretation of the ATDS provision that would treat every smartphone in the country as a prohibited calling device. After all, nearly every modern smartphone has the capacity to store and automatically dial numbers from a list. *See, e.g.*, Apple, How To Use Do Not Disturb While Driving, https://apple.co/2w8nurH (discussing the iPhone's ability to automatically respond to calls and texts from selected numbers).

If courts must avoid *one* constitutional question if at all possible, *see Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288 (1936), then they certainly must try to avoid *two* of them. By granting a stay, the Court would help ensure that it confronts these questions only if it truly must. Moreover, by waiting for the Seventh Circuit's interpretation of the ATDS provision, the parties would be spared the time and expense of potentially unnecessary litigation, including discovery into the capabilities of Sirius XM's vendors' equipment. There is no need to press ahead now, particularly given the imminence of the Seventh Circuit's decision. *See Barnes v. CS Mktg. LLC*, __ F. Supp. 3d __, 2020 WL 30373, at *3 (S.D. Fla. Jan. 2, 2020) (staying a TCPA suit because an impending circuit court decision on the ATDS definition would "likely" "impact" the case).

2.    The Court may also soon wish to stay proceedings depending on what the Supreme Court does with petitions raising identical First Amendment claims to those raised by Sirius XM here. In *Barr v. American Association of Political Consultants, Inc.*, No. 19-631 (U.S.), the

- 14 -

Solicitor General seeks certiorari from the Fourth Circuit's conclusion that the debt-collection exemption violates the First Amendment. In *Facebook, Inc. v. Duguid*, No. 19-511 (U.S.), and *Charter Communications, Inc. v. Gallion*, No. 19-575 (U.S.), private parties facing ATDS claims seek certiorari on the remedial portion of the Ninth Circuit's decision in *Duguid*.

If the Supreme Court grants certiorari, this Court should stay proceedings to await its guidance on these issues. Of course, Sirius XM does not yet know whether the Supreme Court will do so. But as soon as it does—and that should be soon, because two of the petitions are scheduled for the Court's conference on January 10, 2020, and the other is scheduled for the Court's conference on January 24, 2020—Sirius XM will inform this Court. It can then act accordingly.

## CONCLUSION

The Court should dismiss Nazario's Complaint because the ATDS provision is unconstitutionally content-based. In the alternative, it should stay this litigation pending the Seventh Circuit's decision in *Gadelhak*.

Dated: January 8, 2020                          Respectfully submitted,

                                                /s/ Christopher A. Hall

                                                Christopher Adam Hall
                                                JONES DAY
                                                77 West Wacker
                                                Chicago, Illinois 60601-1692
                                                Tel: (312) 782-3939
                                                Fax: (312) 782-8585
                                                Email: chall@jonesday.com

                                                Thomas Demitrack (*pro hac vice* forthcoming)
                                                JONES DAY
                                                North Point
                                                901 Lakeside Avenue
                                                Cleveland, OH 44114-1190
                                                Tel: (216) 586-3939
                                                Fax: (216) 579-0212
                                                Email: tdemitrack@jonesday.com

Lee A. Armstrong (*pro hac vice* forthcoming)
JONES DAY
250 Vesey Street
New York, New York
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com
*Attorneys for Defendant Sirius XM Radio Inc.*

**CERTIFICATE OF SERVICE**

I, Christopher A. Hall, hereby certify that on January 8, 2020, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

*/s/ Christopher A. Hall*